**MLG AUTOMOTIVE LAW, APLC**
A Professional Law Corporation
Jonathan A. Michaels, Esq. – State Bar No. 180455
Kathryn J. Harvey, Esq. – State Bar No. 241029
Kianna C. Parviz, Esq. – State Bar No. 293568
2801 W. Coast Highway, Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
(jmichaels@mlgautomotivelaw.com)
(kharvey@ mlgautomotivelaw.com)
(kparviz@ mlgautomotivelaw.com)

Attorneys for Plaintiff,
Van Nuys Cycle, Inc. dba Old Road Harley-Davidson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VAN NUYS CYCLE, INC., dba OLD ROAD HARLEY-DAVIDSON, a California Corporation,<br><br>               Plaintiff,<br>   vs.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC., a Wisconsin Corporation; and DOES 1 to 10, inclusive,<br><br>              Defendants. | Case No. CV14-6625-R-MRWX<br><br>**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**<br><br>Complaint Filed:    August 22, 2014<br>First Amended<br>   Complaint Filed: October 8, 2014<br><br>Judge:  Honorable Manuel L. Real<br>         312 N. Spring St.,<br>         Courtroom 8, 2nd Floor |

Plaintiff Van Nuys Cycle, Inc. dba Old Road Harley-Davidson ("Plaintiff"), through their counsel Kathryn Harvey of MLG Automotive Law, and Defendant Harley-Davidson Motor Company, Inc. ("Defendant"), through their counsel A. Joel Richlin of Foley & Lardner, participated in an in-person Rule 26(f) conference on November 25, 2014.   Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiff and Defendant hereby provide their Joint Report of Parties, as follows:

a.      **Synopsis**

**A synopsis of the facts alleged by Plaintiff is as follows**: Defendant Harley-Davidson Motor Company, Inc. manufactures, distributes, markets and sells numerous models of motorcycles and motorcycle merchandise in the United States.  In or about June 2004, Michael Moffett purchased Plaintiff Van Nuys Cycle, a Harley-Davidson franchised dealership located at 7630 Van Nuys Boulevard in Van Nuys, California.

Plaintiff alleges that shortly after the June 2004 close of the dealership purchase, Harley-Davidson told Van Nuys Cycle that it wanted the dealership to relocate 18 miles north, to Santa Clarita.  Although Harley-Davidson was telling Plaintiff that they needed to relocate to Santa Clarity, the company was at the same time sending other messages that the dealership could *not* relocate from its Van Nuys location.   For example, the December 6, 2004 Dealer Agreement that Harley-Davidson executed with the Plaintiff, as well as the Harley-Davidson General Conditions, which were incorporated into the December 6, 2004 Dealer Agreement, both expressly told the Plaintiff that it was forbidden from operating the dealership from any location other than in Van Nuys.

Because Moffett was receiving mixed messages from Harley-Davidson, and because he had just paid a premium for the metropolitan dealership

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

4833-3710-4672.1

point, Moffett did not consider the relocation request to be a serious threat. However, in an effort to maintain a harmonious relationship with the manufacturer, Plaintiff tried to find a new dealership location in Santa Clarita that was adjacent to the 5 freeway.  From 2004 through 2008, Plaintiff searched for locations along the I-5 freeway in Santa Clarita that would meet Defendant's requirements, but was unable to find an acceptable location.  Because they were unable to find a suitable location in Santa Clarita, Plaintiff was permitted to remain at its contracted Van Nuys location.

Although Harley-Davidson repeatedly granted Plaintiff extensions of time to remain at its Van Nuys location, it was unwilling to completely withdraw its demand that Plaintiff move to Santa Clarita.   Thus, when the lease on Plaintiff's Van Nuys location expired in or about May 2006, the Plaintiff could not enter into a new long term lease.  As a result, Plaintiff was forced to rent the Van Nuys facility on a month-to-month basis.

In November 2008, Plaintiff was notified by its landlord that it had sold the Van Nuys location and that Plaintiff would need to vacate the property. Desperate to find a new facility, in November 2008, Plaintiff acquiesced to Defendant's location demands and found an available facility in Santa Clarita. Defendant approved the Santa Clarita location in April 2009 as a temporary facility.  On June 14, 2009, Plaintiff moved its dealership operations to the Santa Clarita location.

Once Harley-Davidson had forced Plaintiff to move to Santa Clarita, it then unilaterally reduced Plaintiff's Dealer Assigned Territory (the area in which the dealer is responsible for selling, servicing and otherwise representing Harley-Davidson) by more than 60 percent.  As a result of being forced to move from its Van Nuys location to the significantly less populated Santa Clarita location, and as a result of Defendant's unilateral reduction in Plaintiff's Dealer

4833-3710-4672.1

Assigned Territory by more than 60 percent, Plaintiff has experienced a significant decline in the number of motorcycle units sold, and a corresponding decline in revenue and profits, such that Plaintiff's business has recently suffered zero profits.

**A synopsis of the facts alleged by Defendant is as follows**: Plaintiff's claims are directly contradicted by the signed contractual agreements by the parties and therefore fail on the merits, in addition to being barred by the statute of limitations.  During 2003, Michael Moffett initiated discussions to purchase Van Nuys Cycle from its prior owner.  Van Nuys Cycle had leased and operated its Harley-Davidson dealership for many years in the City of Van Nuys when Mr. Moffett purchased Van Nuys Cycle.  However, as part of the Stock Purchase Agreement dated February 25, 2004, it states as a "Pre-Closing Covenant" that Mr. Moffett "acknowledges that [Defendant] has requested that the geographic area in which [Plaintiff] conducts its franchised business operations be relocated to the Santa Clarita Valley."

On Mary 29, 2004, Harley-Davidson sent a Letter of Intent to Mr. Moffett indicating that Harley-Davidson intended to enter into the Harley-Davidson Motor Company Motorcycle Dealer Contract, as well as the Harley-Davidson Motor Company General Conditions of Sale and Service (collectively "Dealer Contract"),[1] subject to the conditions in the Letter of Intent.  The Letter of Intent states that Mr. Moffett agrees that as a condition precedent to becoming a Harley-Davidson dealer that he "will be offered an Agreement that requires [Mr. Moffett] to relocate the main dealership within 18 months of closing.  The Agreement will, however, expire on December 31, 2004 unless [Mr. Moffett]

---

[1] The Harley-Davidson Motor Company General Conditions of Sale and Service were expressly made a part of the Harley-Davidson Motor Company Motorcycle Dealer Contract.

1    execute[s] the subsequent Motor Cycle Dealer Contract effective January 1,
2    2005." The Letter of Intent states in relevant part, "you will have no right to
3    become a Harley-Davidson dealer until you are officially approved" and that
4    "[s]uch approval will not be given until all of the conditions described above are
5    satisfied . . . ."

6          Defendant approved Mr. Moffett's purchase offer and on June 3,
7    2004, Mr. Moffett acquired 100% of Van Nuys Cycle's outstanding capital stock.
8    On December 6, 2004, Plaintiff and Defendant entered into the Dealer Contract.
9    Accordingly, Mr. Moffett expressly agreed to move Van Nuys Cycle to the Santa
10   Clarita Valley and cannot now claim to the contrary.

11         Regardless, even if Plaintiff's claims did not fail on the merits, they
12   are barred by the applicable statute of limitations. Plaintiff alleges that "[s]hortly
13   after the June 2004 close of the dealership purchase," Defendant began to
14   complain that Plaintiff's facility did not meet Defendant's facility requirements
15   and design guidelines. [FAC, ¶ 18.] Plaintiff further alleges that in 2004,
16   Defendant's then-district sales manager told Plaintiff that its facility was
17   inadequate and verbally informed Plaintiff that it must relocate 18 miles north to
18   the Santa Clarita Valley. [Id.] Plaintiff then began searching, albeit
19   unsuccessfully, for a suitable location in the Santa Clarita Valley between "2004
20   through 2008," with Planitiff repeatedly requesting permission to stay at its Van
21   Nuys location, but Defendant repeatedly denied Plaintiff's requests. [FAC, ¶¶ 24-
22   26.] For one such denial, on April 23, 2008, Defendant's representative
23   communicated to Plaintiff's representative that: "From our meetings, your
24   request(s) to remain in Van Nuys *for any reason* has been denied. . . . *[Y]ou know*
25   *you have to move so please keep searching properties as staying in the Van*
26   *Nuys location is not an option*. . . . Quite honestly, *I wish you would stop the not*
27   *moving conversation as this is not an option*." [FAC, ¶ 26 (emphasis added).]
28

4833-3710-4672.1

Accordingly, each of Plaintiff's claims alleges that Defendant breached its contractual obligations no later than 2004, when Defendant required Mr. Moffett to change Plaintiff's approved location from Van Nuys to Santa Clarita. Thus, the six-year limitations period for breaches of a written contract (under Wisconsin law, which governs the contract) expired before this action was filed and the claims are therefore time-barred, in addition to failing on the merits.

### b.   Subject Matter Jurisdiction

Plaintiff is a California corporation, doing business in Santa Clarita, California. Defendant Harley-Davidson Motor Company, Inc. is a Wisconsin corporation, headquartered in Milwaukee, WI. Thus, there is complete diversity jurisdiction among the parties. The amount in controversy exceeds $75,000. Therefore, there is subject matter jurisdiction.

### c.   Legal Issues

The legal issues are as follows: 1) Did Harley-Davidson Motor Company, Inc. breach its contractual obligations to Van Nuys Cycle, Inc. when it required Van Nuys Cycle, Inc. to move to Santa Clarita, California? 2) Did Harley-Davidson Motor Company, Inc. breach the covenant of good faith and fair dealing by requiring Van Nuys Cycle, Inc. to move to Santa Clarita, California? 3) Does the Wisconsin Statute of Limitations act as a time bar to Van Nuys Cycle, Inc.'s claims?

### d.   Parties, Evidence, etc.

The list of parties is Plaintiff Van Nuys Cycle, Inc. dba Old Road Harley-Davidson and Defendant Harley-Davidson Motor Company, Inc. The anticipated witnesses will be the persons with knowledge at Plaintiff's company,

Defendant's company, and the former owners of Plaintiff Van Nuys Cycle, Inc. The key documents will be the Dealer Agreement and the Harley-Davidson General Conditions.  Defendant also contends key documents will include: the Stock Purchase Agreement between Plaintiff's current and former owners, as well as letters of intent and extension agreements by and between Plaintiff and Defendant.

### e.   Insurance

Neither party is insured for this claim.

### f.   Magistrate Judge

The parties have not consented to a magistrate judge.

### g.   Discovery

The Parties propose no changes to the timing, form or requirements for disclosure under Rule 26(a), this Court's local rules, and Hon. Real's special requirements.  The Parties exchanged Initial Disclosures on November 25, 2014. The Parties have further stipulated to the entry of a Protective Order, which was entered by this Court on November 20, 2014.   The Parties have agreed to exchange documents in their possession, custody or control on or before December 9, 2014.

The Parties anticipate they will need to take discovery regarding all communications and agreements, whether written or oral, between Plaintiff and Defendant, including discovery regarding when it was determined and conveyed to Plaintiff that they would be required to move to Santa Clarita, whether such a requirement constituted a breach of contract, and if so, when a breach of contract action based on these facts should have been commenced.  The Parties further

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

anticipate they will need to take discovery regarding the alleged damages suffered by Plaintiff as a result of the alleged breach of contract.

The Parties believe that discovery conducted in phases would be appropriate in this action.  The first phase would address fact discovery and phase two would address expert discovery.

The Parties have not conducted any discovery thus far.

Plaintiff proposes the following discovery plan:

(a)     September 16, 2015, as the deadline to complete factual discovery.

(b)     August 17, 2015, as the deadline for designation of experts for both parties.

(c)     September 16, 2015, as the deadline for rebuttal designation of experts for both parties.

(d)     October 16, 2015, as the deadline to complete expert discovery.

Defendant proposes the following discovery plan:

(a)     October 16, 2015, as the deadline to complete factual discovery.

(b)     September 17, 2015, as the deadline for designation of experts for both parties.

(c)     October 16, 2015, as the deadline for rebuttal designation of experts for both parties.

(d)     November 16, 2015, as the deadline to complete expert discovery.

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

4833-3710-4672.1

Additionally, Defendant notes that it has a trial in the U.S. District Court in Hawaii from September 21, to September 30, 2015, which involves some of the same witnesses as this case.

### h.    Motions

Defendant has filed an Amended Motion to Dismiss, which is set to be heard on January 20, 2015.   Should their Amended Motion to Dismiss be denied, Defendant anticipates filing a Motion for Summary Judgment.

### i.    Class Certification

Not applicable.

### j.    Dispositive Motions

Plaintiff proposes October 16, 2015, as the deadline for objecting to experts (*Daubert* motions).

Plaintiff proposes September 16, 2015, as the deadline for dispositive motions.   These motions may include a motion for summary judgment on Plaintiff's claims.

Defendant proposes December 7, 2015, as the deadline for objecting to experts (*Daubert* motions).

Defendant proposes October 16, 2015, as the deadline for dispositive motions.   These motions may include a motion for summary judgment on Plaintiff's claims.

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

4833-3710-4672.1

### k.      Settlement/Alternative Dispute Resolution

No settlement negotiations have taken place.  Pursuant to Local Rule 16-15.4, the Parties are willing to engage in ADR Procedure No. 1.  Plaintiff proposes a mediation deadline of July 31, 2015.

### l.      Pretrial Conference and Trial

Plaintiff Proposes November 2, 2015, as the deadline for submitting Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists.

Plaintiff anticipates that this case will be ready for a pretrial conference on November 9, 2015, and trial on November 16, 2015.

Defendant proposes January 11, 2016, as the deadline for submitting Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists.

Defendant anticipates that this case will be ready for a pretrial conference on January 18, 2016, and trial on January 25, 2016.

### m.      Trial Estimate

The parties anticipate that the trial of this case will last approximately three to five trial days, including jury selection.

### n.      Trial Counsel

The attorneys who will try the case are Jonathan A. Michaels and Kathryn J. Harvey for Plaintiff and A. Joel Richlin and Sonia Salinas for Defendant.

4833-3710-4672.1

1

2    **o.     Independent Expert or Master**

3          The parties do not see a need for a master, pursuant to Federal Rule

4    of Civil Procedure 53, or an independent scientific expert.

5    **p.     Other Issues**

6          The parties do not believe there are any other issues affecting the

7    status or management of the case.

8

9                                   **MLG AUTOMOTIVE LAW, APLC**

10

11   Dated:  December 9, 2014        By:       */s/ Kathryn J. Harvey*
                                                Jonathan A. Michaels, Esq.
12                                              Kathryn J. Harvey, Esq.
                                                Kianna C. Parviz, Esq.
13                                              Attorneys for Plaintiff,
                                                Van Nuys Cycle, Inc.
14
15
16                                  **FOLEY & LARDNER LLP**
17
18   Dated:  December 9, 2014        By:       */s/ A. Joel Richlin*
19                                              Sonia Salinas, Esq.
                                                A. Joel Richlin, Esq.
20                                              Jacob W. Nelson, Esq.
21                                              Attorneys for Defendant,
                                                Harley-Davidson Motor Company, Inc.
22
23
24
25
26
27
28

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

4833-3710-4672.1

1   <u>**ATTESTATION REGARDING SIGNATURES**</u>

2       I, Kathryn J. Harvey, attest that I have obtained the concurrence of A. Joel Richlin, Esq.,

3   counsel for Defendant Harley-Davidson Motor Company, Inc., in the filing of this document.

4

5

6                                 **MLG AUTOMOTIVE LAW, APLC**

7

8   Dated:  December 9, 2014          By:          */s/ Kathryn J. Harvey*

9                                       Jonathan A. Michaels, Esq.

10                                      Kathryn J. Harvey, Esq.

11                                      Kianna C. Parviz, Esq.

12                                      Attorneys for Plaintiff,

13                                      Van Nuys Cycle, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT REPORT OF PARTIES PURSUANT TO RULE 26(f)**

4833-3710-4672.1